IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN A. MICKENS, ) | |
| ) | Civil Action No. 10 - 1754 |
| Plaintiff, ) | |
| ) | District Judge Joy Flowers Conti |
| v. ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| SCI GREENE C.E.R.T. TEAM ) | ECF No. 32 |
| SUPERVISOR, *et al.*, ) | |
| ) | |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendants Lindley, Martin, and Folino (ECF No. 32) be granted. It is further recommended that Plaintiff's claims against these Defendants be dismissed with prejudice as granting Plaintiff leave to amend would be futile.

**II.    REPORT**

Plaintiff, Kevin A. Mickens, was formerly an inmate in the custody of the Pennsylvania Department of Corrections at the State Correctional Institute at Greene (SCI-Greene). Plaintiff initiated this civil rights action under 42 U.S.C. § 1983 on December 27, 2010, against the following Defendants: SCI-Greene C.E.R.T. Team Supervisor;[1] Bonnie Lindley, AA Block Unit Manager; J.A. Martin, Deputy Superintendent of SCI-Greene; and Louis S. Folino, Superintendent of SCI-Greene. *See* (ECF No. 4.) Defendants Lindley, Martin, and Folino

---

[1]    The United States Marshals Service was unable to effectuate service on Defendant SCI-Greene C.E.R.T. Team Supervisor. (ECF No. 12.)

(collectively referred to as "Defendants") filed a motion to dismiss Plaintiff's complaint (ECF No. 13) and Plaintiff filed an amended complaint on August 9, 2011 (ECF No. 23). Defendants again filed a motion to dismiss (ECF No. 25) and the motion was denied as moot after Plaintiff filed a second amended complaint[2] on August 30, 2011 (ECF No. 30). Defendants now move to dismiss the second amended complaint (ECF No. 32), and although Plaintiff was given an opportunity to respond to the motion, he filed nothing in opposition.[3]

### A. Plaintiff's Allegations

Plaintiff alleges that on June 18, 2010, while on lockdown at SCI-Greene, members of the C.E.R.T. Team searched his cell and damaged his Qur'an. Specifically, Plaintiff contends that after the search team members left his cell, he found his Qur'an on his bed with the mattress folded over on top of it. He placed the Qur'an at the head of his bed, and when he reached for it later on that night he noticed that the book's spine was broken. As a result the book came apart from the cover.

The following day Plaintiff wrote an inmate request to staff member Major Winfield complaining that the search team members had damaged his Qur'an and requested that the book be replaced. Major Winfield responded that Plaintiff should have immediately notified supervisors at the time of the incident had he felt that his property was damaged. Unsatisfied with this response because he was unable to witness the cell search and did not notice that his Qur'an was damaged until later that night, Plaintiff filed an inmate grievance on June 22, 2010. Although Plaintiff filed the grievance with the grievance coordinator Dan Davis, the grievance

---

[2] In his second amended complaint, Plaintiff replaces Defendant SCI-Greene C.E.R.T. Team Supervisor with Defendant Unknown C.E.R.T. Team Members of SCI-Greene.

[3] On October 25, 2011, Plaintiff was ordered to file a response, including any exhibits or attachments, in opposition to Defendants' motion to dismiss and told that if he failed to comply with the order that the motion would be decided without the benefit of his response.

2

was responded to by Bonnie Lindley, the unit manager of Plaintiff's cell block. Lindley denied the grievance finding that it was Plaintiff's responsibility to promptly examine the contents of his cell following the search and immediately report damage to staff. She stated that Plaintiff had not been diligent in his efforts because his grievance was filed five days after the search. Lindley further stated that Plaintiff's claim could not be supported because there was no indication that a mattress folded over on a book would cause the damage he described.

Plaintiff appealed the grievance to Deputy Superintendent J.A. Martin stating that he was not untimely reporting the damage to staff because had not noticed that his Qur'an was damaged until later that evening and, once he did notice, he filed an inmate request to Major Winfield the following day attempting to resolve the situation before filing a grievance. He further stated that Lindley had misconstrued his grievance in that the search team members and not the mattress caused the damage to the Qur'an. Plaintiff's grievance appeal was remanded for further review and he received an amended initial review response. However, Plaintiff's grievance was again denied because he did not immediately examine the contents of his cell following the search and report the damage to the staff member on duty.

Plaintiff next appealed to final review with the Secretary's Office of Inmate Grievances and Appeals at SCI-Camp Hill, but that appeal was dismissed because Plaintiff did not first appeal the remanded initial review response to the Superintendent of SCI-Greene. Following these directives, Plaintiff appealed the remanded initial review response to Superintendent Louis S. Folino, and his appeal was dismissed for failure to comply with DC-ADM 804 because the text of his appeal and the statement of facts exceeded two pages. Plaintiff appealed to the Secretary's Office of Inmate Grievances claiming that, according to the inmate handbook, he did follow proper procedures in his appeal to Superintendent Folino. After not receiving a response,

Plaintiff requested to know the status and was informed that the office had no record of receipt of his appeal on this issue. As a result, Plaintiff filed a new grievance alleging that the staff at SCI-Greene tampered with his mail because his appeal had not been delivered even though he had been charged postage. That grievance was denied.

### A. Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or

identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Discussion

Plaintiff does not specify in his second amended complaint as to what laws he claims Defendants violated. However, according to a motion Plaintiff filed the same day he filed his second amended complaint, he claims that Defendants violated his right to the free exercise of religion under the First Amendment to the United States Constitution and his right to religious

5

freedom under Article 1, Section 3 of the Pennsylvania Constitution. As relief, Plaintiff seeks monetary damages and replacement of his Qur'an.

**1. Section 1983 Claim**

   **a. Official Capacity**

Defendants contend that the Eleventh Amendment bars Plaintiff's claims for money damages against them in their official capacities. As an initial matter, Plaintiff's second amended complaint does not specify whether he seeks relief from Defendants in their official or individual capacities. Nevertheless, the Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived. United States v. Mitchell, 445 U.S. 535, 538 (1980). By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *see also* Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). The doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Garden State Elec. Inspection Servs. v. Levin, 144 F. App'x 247, 251 (3d Cir. 2005) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). In Will, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted. Will, 491 U.S. at 64. However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual, or personal capacity. Hafer v. Melo, 502 U.S. 21, 31 (1991); Ex parte Young, 200 U.S. 123, 159-60 (1908); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002). Based on this well-settled

law, Plaintiff's claims for money damages against Defendants in their official capacities should be dismissed.

Additionally, Plaintiff's claim for injunctive relief must be dismissed as moot because he was released from prison and is no longer in the custody of the Pennsylvania DOC. *See* Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993).

**b. Individual Capacity**

Defendants next contend that they should be dismissed as parties to this action because Plaintiff has failed to show personal involvement with respect to his claims against them in their individual capacities. To establish individual liability under section 1983, "[a] defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also* Rizzo v. Goode, 423 U.S. 362 (1976). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08. Thus, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Id. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. Id. at 1208.

A review of Plaintiff's second amended complaint reveals no facts alleging personal involvement on the part of Defendants except for their participation in the disposition of Plaintiff's grievances and appeals. However, participation in the review of a grievance or appeal is not enough to establish personal involvement. *See* Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation

that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying alleged unconstitutional conduct); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, at *13 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corr., 2006 U.S. Dist. LEXIS 51582, at *6-7 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.") (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)).  Also, while prisoners have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts, which is not compromised by the failure of the prison to address grievances.  Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997).  For these reasons, Plaintiff's claims against Defendants in their individual capacities should be dismissed.

**2. Pennsylvania Constitutional Claim**

Plaintiff also claims that Defendants violated his right to religious freedom under Article 1, Section 3 of the Pennsylvania Constitution.  Although the Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a cause of action for damages for state constitutional violations, the Commonwealth Court as well as federal district courts explicitly hold that no such rights exist.[4]  *See, e.g.*, Bodnar v. Wagner, 2010 U.S. Dist.

---

[4] When making a prediction as to how the Pennsylvania Supreme Court would rule, the court "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state

LEXIS 289, at *20-21 (M.D. Pa. Jan. 5, 2010) (agreeing with other courts that "there is no private cause of action available for seeking monetary damages for violations of the Pennsylvania Constitution"); Taylor v. Moletsky, 2010 U.S. Dist. LEXIS 6260 (E.D. Pa. Jan 26, 2010) (same); Jones v. City of Philadephia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("neither statutory, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution"), *appeal denied*, 909 A.2d 1291 (2006). Accordingly, Plaintiff's claim for monetary damages pursuant to the Pennsylvania Constitution fails.

## III.  CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants Lindley, Martin, and Folino (ECF No. 32) be granted. It is further recommended that Plaintiff's claims against these Defendants be dismissed with prejudice as granting Plaintiff leave to amend would be futile.[5]

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the

---

supreme courts that have addressed the issue," among other sources. Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011) (quoting Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010)).

[5]   In dismissing Plaintiff's second amended complaint against these Defendants, the Court is mindful of the fact that *pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative complaint even when they do not seek leave to do so, "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: March 19, 2012

s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge


cc: Kevin A. Mickens
1277 Noblestown Road
Oakdale, PA 15071

Counsel of record.